**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles H. Roop, | No. CV 12-0270-PHX-RCB (JFM) |
| Plaintiff, | **O R D E R** |
| vs. | |
| Charles L. Ryan, et al. | |
| Defendants. | |

Plaintiff Charles H. Roop brought this civil rights action pursuant to 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Director Charles L. Ryan, former Warden Ernest Trujillo, and Deputy Warden Jeffrey Freeland (Doc. 8). Before the Court is Defendants' Motion for Summary Judgment (Doc. 30), which Plaintiff opposes (Doc. 33).

The Court will grant the motion and terminate the action.

**I.  Background**

In his First Amended Complaint, Plaintiff averred that he receives monthly Veteran's Administration (VA) disability checks and that Defendants commingle the funds derived from these checks with funds received for deposit to other inmates' accounts to maximize the interest earned. He claimed that the interest accumulated from this interest-bearing account is transferred into a special service fund pursuant to state law rather than being credited to him (id.). Plaintiff further alleges that Defendants unconstitutionally delayed

receipt of his VA benefits when they imposed and enforced Department Order (DO) 905 § 1.3.3, which suspends or hold funds for 10 business days from the date of deposit (id.).

The Court determined that Plaintiff sufficiently stated a claim for a violation of the Fifth Amendment Takings Clause (Doc. 10).

Defendants now move for summary judgment on the grounds that (1) there is no Fifth Amendment violation because the taking of interest earned from Plaintiff's account was not without just compensation; (2) the restrictions on Plaintiff's incoming funds are reasonably related to legitimate penological interests; and (3) Defendants are entitled to qualified immunity (Doc. 30).

## II.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation

omitted); see Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.   Parties' Contentions**

    **A.   Defendants' Motion**

In support of their motion, Defendants submit a separate Statement of Facts (DSOF), which is supported by the declaration of Sheryl Bodmer, ADC Bureau Administrator of Financial Services, and attachments (Doc. 31, Ex. C, Attachs.).

Defendants assert that, in accordance with state statute, interest earned on inmate trust account funds—which are invested with the state treasurer—is deposited in the Special Services Fund, which supports the benefit, education, and welfare of all inmates (Doc. 30 at 3).

Defendants acknowledge that the ADC method of dealing with interest earned on Plaintiff's inmate trust account is a taking under the Fifth Amendment; however, they argue that there has been no deprivation of just compensation and, thus, no Fifth Amendment violation because the accrued interest earned on Plaintiff's money did not exceed his share of ADC's operating costs of the Inmate Trust Fund (id. at 6). According to Defendants, in 2011 and 2012, Plaintiff earned less than one dollar each year in interest; yet, his share of the operating costs was just over $40.00 each year (id.). Defendants therefore maintain that because the interest earned was less than Plaintiff's share of the cost of administering the inmate trust accounts, there is no "just compensation" due to Plaintiff, and they are entitled to summary judgment (id.).

Next, Defendants assert that the limitations on disbursement of inmate monies set forth in DO 905.03 are reasonably related to legitimate penological interests (id. at 8-10). They argue that the limitations reduce contraband import and the frequency and incentives

1    for extortion and bribery (id. at 9).

2    Lastly, Defendants argue that even if the Court found a violation, there is no clearly
3    established precedent indicating that Defendants' handling of Plaintiff's funds violated
4    Plaintiff's rights such that it should have been obvious to a reasonable official and, therefore,
5    they are entitled to qualified immunity (id. at 12-13).

### B. Plaintiff's Response[1]

Plaintiff submitted a response memorandum and a separate Statement of Facts (PSOF) in response to DSOF (Docs. 33-34).

Plaintiff argues that the state legislature establishes laws dictating how the ADC Director is to handle incoming inmate funds but it did not provide any statute that allows ADC to hold inmate funds prior to disbursement for the purpose of drawing interest from those funds (Doc. at 2-3). According to Plaintiff, it is unlikely the state legislature would have intended for the ADC to hold VA checks for this purpose, and he maintains that the interest derived from his VA benefits should belong to him (id. at 3). Plaintiff asserts that Defendants' argument that the interest earned on his funds covers maintenance costs is moot because if the legislature wanted to charge fees for such maintenance, they would have provided for that in state law (id.).

Plaintiff contends that the hold or suspension of his VA funds pursuant to DO 905.01 § 1.1.3 violates 38 U.S.C. § 5301, and that this, as well as the allocation of interest on his funds, has been held unlawful by the Ninth Circuit in Nelson v. Heiss, 271 F.3d 891 (9th Cir. 2001), and Higgins v. Beyer, 293 F.3d 683 (3d Cir. 2002) (id. at 4-5). He states that the hold renders his VA check unavailable for approximately 20 days after receipt (id. at 6).

As to Defendants' argument regarding the rationale for limitations on inmate-monies disbursement, Plaintiff asserts that there is no proof that the availability of his money in his account could possibly affect the inmate population (id. at 7).

---

[1]The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion and the requirements under Federal Rule of Civil Procedure 56 (Doc. 32).

1  **C.   Defendants' Reply**

2   Defendants argue that Plaintiff failed to properly address their assertions of fact and
3 he ignored the crux of the substantive argument; that is, that it costs more to administer his
4 inmate account than any interest earned to which he would otherwise be entitled (Doc. 35 at
5 1-2). Defendants further argue that Plaintiff ignores the distinction between seizure,
6 confiscation, and assignment of inmate funds prohibited by Nelson, and temporary holds on
7 deposits, which are at issue in this case (id. at 2).

8  **IV.   Analysis**

9   The parties do not dispute the material facts; namely, that Plaintiff's VA checks are
10 placed on hold for 10 business days; that those checks are placed in an interest-bearing
11 account; and that the interest earned on Plaintiff's VA checks does not go to him but is
12 deposited in a general fund for the benefit, education, and welfare of all inmates.

13   "The Takings Clause of the Fifth Amendment prohibits the government from taking
14 private property for public use without just compensation." Ward v. Ryan, 623 F.3d 807,
15 810 (9th Cir. 2010) (discussing the Takings Clause as it applies to inmate trust fund
16 accounts); U.S. Const., amend. V. While the Fifth Amendment does not preclude the
17 Government from confiscating private property, it does impose two conditions on the
18 exercise of such authority: the taking must be for "public use," and "just compensation" must
19 be paid to the owner. Brown v. Legal Found. of Wash., 538 U.S. 216, 231-32 (2003). The
20 Takings Clause is applicable to the States through the Fourteenth Amendment. Dolan v. City
21 of Tigard, 512 U.S. 374, 383 (1994).

22   The Ninth Circuit has held that diversion of the interest on inmates' trust accounts into
23 a common inmate welfare fund constitutes a "taking" under the Fifth Amendment. McIntyre
24 v. Bayer, 339 F.3d 1097, 1099-1100 (9th Cir. 2003); Schneider v. Cal. Dep't of Corrs., 345
25 F.3d 716, 720 (9th Cir. 2003). But the Fifth Amendment only proscribes taking *without* just
26 compensation. Schneider, 345 F.3d at 720 (citing Brown v. Legal Found. of Wash., 538 U.S.
27 216, 235 (2003). To determine whether such action constitutes a taking without just
28 compensation, an individualized assessment of net interest and just compensation is required;

the court must examine whether the interest earned on the individual plaintiff's inmate trust account is exceeded by his share of the costs of administering the personal inmate trust account. Schneider, 345 F.3d at 720-21 (citing McIntyre, 339 F.3d at 1097). In Schneider, like the instant action, the interest earned on inmate trust accounts was not allocated to cover only the trust account administration costs, but to a general welfare fund "used for the benefit, education, and welfare of inmates . . . ." Id. at 719.

Plaintiff contends that the state legislature did not provide for a fee to be assessed to cover the costs of maintaining inmate trust accounts; thereby suggesting that Defendants' actions violate state law. Plaintiff did not raise a state-law claim in his pleading. Nonetheless, Arizona Revised Statute § 41-1604.05, which provides for interest from inmate trust accounts to be retained in an interest bearing account and deposited in a special services fund, mirrors the Nevada state statute addressed in McIntyre and the California state statute addressed in Schneider. See McIntyre, 339 F.3d at 1098 (Nev. Rev. Stat. § 209.221(3)); Schneider, 345 F.3d at 719 (Cal. Penal Code § 5008).

Defendants submit evidence demonstrating that in 2011, the interest earned on Plaintiff's inmate trust account was $0.52, and in 2012, the interest earned was $0.60 (Doc. 31, DSOF ¶¶ 14-15). The evidence shows that the average annual cost per inmate to administer the inmate trust accounts is $47.43 (id. ¶ 13). Thus, the interest earned on Plaintiff's inmate trust account is exceeded by his share of the administration costs. Based on the holdings in McIntyre and Schneider, this constitutes just compensation for the taking of interest on Plaintiff's account.

The Court notes, however, that Plaintiff's claim pertains solely to interest on his VA checks, and neither McIntyre nor Schneider addressed inmate trust accounts supported by funds from the VA. See McIntyre, 339 F.3d at 1098 (personal property trust fund included "wages earned during incarceration as well as any money received from outside sources"); Schneider, 345 F.3d at 718-710 (no reference to source of funds in inmate trust accounts). VA benefits are treated differently than other sources of income. Federal statute provides that VA benefits are not assignable and are exempt from taxation, creditors' claims, and from

1 attachment, levy, or seizure under any process whatsoever, either before or after receipt by
2 the beneficiary. 38 U.S.C. § 5301(a)(1). Thus, federal veterans' benefits retain their exempt
3 status even after being deposited in a bank account. Porter v. Aetna Ca. & Sur. Co., 370 U.S.
4 159, 160-61 (1962); see Nelson, 271 F.3d at 896 ("[e]ven after receipt and deposit, the
5 [veterans' benefits] funds remained subject to the call of the veteran, or his guardian, and
6 could not be touched").

7 As Defendants argue, the cases on which Plaintiff relies, Nelson and Higgins, concern
8 situations where (1) the inmate assigned a future VA check to cover purchases made with
9 insufficient funds and (2) prison officials seized an inmate's VA check to pay a court fine.
10 Both these actions are prohibited by § 5301. The Nelson decision refers to a "hold" placed
11 on the prisoner's account after he submitted withdrawal orders for funds to be withdrawn
12 from his account to purchase copies and dental supplies. 271 F.3d at 893. The prisoner did
13 not have sufficient funds in his account to cover the purchases; however, instead of
14 "bouncing" his withdrawal orders, the prison offered a kind of overdraft protection—it
15 allowed the purchases and placed a hold on the account so it could be repaid when funds
16 arrived. Id. This "hold" allowed for the assignment of future veterans' benefits, which, as
17 stated, is prohibited under the statute.

18 Defendants' temporary hold on Plaintiff's VA disbursement checks is not the same
19 type of "hold" referred to in Nelson, and it did not provide for an assignment of benefits.
20 Although the temporary hold on Plaintiff's VA checks appears unnecessary because they are
21 issued by the US Treasury (see Doc. 34, PSOF ¶ 19), it is similar to standard commercial
22 banking procedures that place holds on most deposited checks, and nothing in § 5301
23 prohibits such holds. Indeed, the Court already held in its Screening Order that the delay in
24 crediting Plaintiff's account with his VA benefits does not violate the governing federal
25 statutes (Doc. 10 at 4).

26 Further, there is nothing in § 5301 regarding interest on VA benefits or specifying that
27 interest on VA benefits constitutes non-taxable interest or interest that is otherwise exempt
28 in the same manner that the VA benefit itself is exempt. Absent that specific language in the

- 7 -

1 statute or any precedent treating interest on VA benefits as exempt, there is nothing to
2 support that Defendants' temporary hold and allocation of interest on Plaintiff's VA checks
3 violates the Fifth Amendment or any other federal right.

4 The Court need not address Defendants' Turner argument in support of DO 905.03,
5 because that provision is not relevant to Plaintiff's claim, nor does the Court need to address
6 qualified immunity.  Defendants' Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 30).

(2) Defendants' Motion for Summary Judgment (Doc. 30) is **granted**.

(3) The Clerk of Court must terminate the action and enter judgment accordingly.

(4) For the reasons set forth herein, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from the judgment in this action would not be taken in good faith.

DATED this 19th day of June, 2013.

_____
Robert C. Broomfield
Senior United States District Judge